**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**
**ALBUQUERQUE DIVISION**

| | |
|---|---|
| **WHITNEY BROOKS.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.** _____ |
| ) | |
| **BYE UAS, INC. DBA SILENT** ) | |
| **FALCON UAS TECHNOLOGIES,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff Whitney Brooks for her claims against defendant Bye UAS, Inc. d/b/a Silent Falcon UAS Technologies hereby states and alleges as follows:

### *The Parties*

1.  Plaintiff Whitney Brooks is a resident of Tennessee.

2.  Defendant Bye UAS, Inc. d/b/a Silent Falcon UAS Technologies ("Silent Falcon") is a Nevada corporation, that is registered to do business in New Mexico as a foreign corporation and holds itself out as having a corporate headquarters at 8411 Firestone Lane NE, Suite A, Albuquerque, New Mexico. Silent Falcon may be served by serving its registered agent, John W. Brown, at 8411 Firestone Lane NE, Suite A, Albuquerque, New Mexico.

### *Jurisdiction*

3.  This Court has personal jurisdiction over Silent Falcon at least pursuant to NMSA § 38-1-16 and Fed. R. Civ. P. 4(k)(1)(A) because:

(a)  Silent Falcon is a foreign for-profit corporation registered with the New Mexico Secretary of State since June 6, 2011, with Business Id # 4453684;

1

(b)     Silent Falcon operates, conducts, engages in, or carries on business in the State of New Mexico and holds itself out as having a corporate headquarters at 8411 Firestone Lane NE, Suite A, Albuquerque, New Mexico.

(c)     Silent Falcon has committed tortious acts against Plaintiff Whitney Brooks in the State of New Mexico.

(d)     Silent Falcon breached a contract governed by the laws of the State of New Mexico.

4.     Silent Falcon is headquartered in and conducts business in the State of New Mexico in such a manner and fashion as the exercise of personal jurisdiction over Silent Falcon comports with requirements of due process under the United States and New Mexico Constitutions.

5.     Pursuant to 28 U.S.C. §§ 1331 and 1367, this Court has federal question jurisdiction over this action because it arises in part under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and because all supplemental state law claims arise out of the same case or controversy as the federal claim over which this Court has original jurisdiction.

6.     Pursuant to 28 U.S.C. § 1332, the Court also has original subject matter jurisdiction over this action based on the complete diversity of citizenship among the parties to this action and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     Pursuant to 28 U.S.C. § 1391, venue is proper in this District because Silent Falcon is a resident of this judicial district and/or because a substantial part of the events or omissions giving rise to the claims in this action occurred within this judicial district.

### General Allegations

8.      Silent Falcon is in the unmanned aircraft systems, i.e. drone, business (hereinafter "UAS").

9.      In the summer of 2019, Silent Falcon was in search of a new Chief Executive Officer.

10.     At that time, Ms. Brooks was sole owner and President of Unmanned Power, LLC, a recruiting firm specializing in the recruitment of executives, pilots and employees for UAS businesses nationwide.

11.     Silent Falcon contacted Ms. Brooks and engaged Unmanned Power to assist Silent Falcon in finding its next CEO. Silent Falcon paid Unmanned Power a retainer of $10,000 to begin its search for candidates to interview for the position of Silent Falcon's CEO.

12.     In late summer of 2019, Ms. Brooks introduced Grant Bishop to Silent Falcon's Board of Directors. Ultimately, Silent Falcon hired Mr. Bishop as its CEO at the recommendation of Ms. Brooks.

13.     Ms. Brooks/Unmanned Power was paid an additional fee of $30,000 for the recruiting, introduction and placement of Mr. Bishop as CEO of Silent Falcon.

14.     Mr. Bishop is currently the CEO of Silent Falcon. During all events described herein, Mr. Bishop was acting in the course and scope of his employment with Silent Falcon.

15.     In the spring of 2020, Silent Falcon was in need of someone to assist the company, on a part-time basis, in soliciting sales in FAA Region II, an area compromised of seventeen southern states (KY, TN, NC, SC, MS, AL, GA, FL, LA, AR, OK, TX, NM, NE, KS, IA, and MO), and in building its sales processes. Mr. Bishop contacted Ms. Brooks and asked if she would be interested in the position.

16.     Ms. Brooks agreed to assist Silent Falcon on a part-time basis as an independent contractor, so long as she could continue to devote the majority of her time to operating Unmanned Power, her lucrative UAS recruiting business.

17.     Ms. Brooks agreed to accept the position and devote 5 hours of time a week in exchange for $500 per week, plus 5% of any sales.

18.     On May 27, 2020, Silent Falcon presented Ms. Brooks with a Confidential Information, Inventions and Non-Competition Agreement ("Brooks Non-Compete Agreement"). Ms. Books signed the agreement and returned it to Silent Falcon. Neither Mr. Bishop nor anyone at Silent Falcon returned a copy of the agreement signed by the Company. A true and correct copy of the Brooks Non-Compete Agreement is attached hereto as Exhibit A.

19.     On June 1, 2020, Silent Falcon presented Ms. Brooks with a Non-Competition and Non-Solicitation Agreement for Unmanned Power ("Unmanned Power Non-Compete Agreement"). Ms. Brooks signed the agreement on behalf of Unmanned Power and returned it to Silent Falcon. Neither Mr. Bishop nor anyone at Silent Falcon returned a copy of the agreement signed by the Company. A true and correct copy of the Unmanned Power Non-Compete Agreement is attached hereto as Exhibit B.

20.     On June 18, 2020, Silent Falcon presented Ms. Brooks with a Commission Sales Agreement for her role as a part-time, independent contract salesperson ("Commission Sales Agreement"). Ms. Brooks signed the Commission Sales Agreement and returned it to Silent Falcon. Neither Mr. Bishop nor anyone at Silent Falcon returned a copy of the agreement signed by the Company. A true and correct copy of the Commission Sales Agreement is attached hereto as Exhibit C.

21.     The Commission Sales Agreement purports to pay Ms. Brooks commissions only; however, Silent Falcon agreed to pay Ms. Brooks $2,000 per month net income plus 5% commissions.

22.     All payments made under the Commission Sales Agreement were paid to Ms. Brooks' company, Unmanned Power.

23.     From July through September 2020, Silent Falcon paid Unmanned Power approximately $500.00 per week net income as per the parties' agreement.

24.     During this timeframe, Ms. Brooks routinely worked more than five hours per week, and she advised Mr. Bishop that she would only do that for ninety days before her compensation would need to be renegotiated.

25.     On July 23, 2020, Ms. Brooks advised Mr. Bishop that she could only work for $500.00 per week for one more month and that Silent Falcon would need to renegotiate her compensation agreement.

26.     Sometime in summer 2020, Mr. Bishop showed Ms. Brooks a Silent Falcon budget that revealed her salary at or near $250,000.00. He also showed her pricing spreadsheets where Ms. Brooks' salary was costed out at approximately $200,000.00.

27.     In August and September 2020, Mr. Bishop contacted Ms. Brooks to discuss Silent Falcon's desire to make Ms. Brooks a full-time employee and the company's Executive Vice President of Operations.

28.     Silent Falcon's proposal called for a significant increase in Ms. Brooks' responsibilities, including but not limited to: (1) being responsible for sales in all nine FAA regions; (2) hiring and supervising other sales personnel; (3) potentially supervising other non-

sales employees of the company; and (4) working with Mr. Bishop to create a national sales strategy.

29.     The company's proposal meant Ms. Brooks would have to largely, but not completely, give up the recruiting business she had built at Unmanned Power to focus on Silent Falcon.

30.     On September 18, 2020, Hannah Goelz, Silent Falcon's Operations Manager, sent Ms. Brooks an Employee Agreement purporting to move Ms. Brooks from a five hour a week part-time independent contractor to a full-time Executive Vice President of Operations. The terms of the company's written agreement called for Ms. Brooks to switch from a five hour per week, independent contractor to a full-time employee with significant additional responsibilities for the same $2,000/mos. net take home pay and 5% commission that Silent Falcon was already paying Ms. Brooks pursuant to the Commission Sales Agreement.

31.     Ms. Brooks advised Ms. Goelz that she would not agree to those terms nor sign the Employment Agreement until she could discuss the matter with Mr. Bishop.

32.     Later that day, Mr. Bishop and Ms. Brooks had a lengthy telephone call to discuss the terms of Ms. Brooks' proposed full-time employment as Silent Falcon's Executive Vice President of Operations.

33.     During this September 18, 2020 phone call, Ms. Brooks reminded Mr. Bishop that she had agreed to support her sales territory for ninety days at an extremely low rate of pay and that this agreement was now approaching 120 days in existence. Ms. Brooks further advised Mr. Bishop that she needed to be compensated for her time at a value commensurate with her talent and experience or she would need to return to working five hours per week or focus her attention on her recruiting company Unmanned Power. She also floated the possibility of a deferred

compensation plan to Mr. Bishop, given Silent Falcon's relatively undemonstrated sales record and cash flow issues.

34.     Mr. Bishop told Ms. Brooks during the September 18, 2020 phone call to tell him what Silent Falcon needed to do to make this employment deal happen and Silent Falcon would make it happen.

35.     Mr. Bishop also advised Ms. Brooks during the September 18, 2020 phone call that he believed she was worth $250,000.00 in salary per year.

36.     Mr. Bishop further represented during the September 18, 2020 phone call that he had been to Silent Falcon's banking lender and it was willing to float Silent Falcon money some of which could cover Ms. Brooks' salary.

37.     No agreement was reached during this telephone call.

38.     On September 30, 2020, Ms. Brooks and Mr. Bishop had a subsequent conversation about the proposed terms of Ms. Brooks converting from a part-time, independent contractor to a full-time employee. Mr. Bishop confirmed Ms. Brooks was doing a great job and had built a fantastic sales team. Mr. Bishop expressed he did not want Silent Falcon to lose Ms. Brooks, but could not immediately compensate her for her full value. As such, Ms. Brooks and Mr. Bishop discussed a deferred compensation plan offset by commissions.

39.     During this meeting, and on behalf of Silent Falcon, Mr. Bishop agreed to an employment agreement with Ms. Brooks to include a guaranty of $15,000 per month net income, payable six months in arrears, plus 5% commission on all company sales, with Silent Falcon to get a dollar-for-dollar offset on any commissions earned.

40.     Mr. Bishop asked Ms. Brooks to memorialize the agreement with a written contract.

41.     On October 15, 2020, Ms. Brooks revised the Employment Agreement previously sent by Ms. Goelz to reflect the terms of the new agreement ("Brooks Employment Agreement"). Ms. Brooks then signed and sent the new agreement back to Ms. Goelz, Silent Falcon's Operations Manager. A true and correct copy of the Brooks Employment Agreement is attached hereto as Exhibit D. Along with the employment agreement, Ms. Brooks sent Ms. Goelz her payroll deposit form, Form I-9, and Form W-4 so that the company could process Ms. Brooks as a new employee. A true and correct copy of Ms. Brooks' October 15, 2020 email to Ms. Goelz, and attachments, is attached hereto as Exhibit E.

42.     The documents Ms. Brooks provided Ms. Goelz were subsequently used by Ms. Goelz to process Ms. Brooks as an employee of Silent Falcon and to pay Ms. Brooks as a W-2 employee on a moving forward basis.

43.     Like all previous agreements before it, neither Mr. Bishop nor anyone at Silent Falcon returned a copy of the Brooks Employment Agreement signed by the Company to Ms. Brooks.

44.     Between October 15, 2020 and February 2021, Ms. Brooks worked as the Executive Vice President of Operations for Silent Falcon.

45.     At no time between October 15, 2020 and February 21, 2021 did anyone from Silent Falcon advise Ms. Brooks there was any issue with the Brooks Employment Agreement she forwarded on October 15, 2020.

46.     On December 21, 2020, Silent Falcon reimbursed Ms. Brooks for three separate business expenses, totaling $2,868.40.

47.     On February 21, 2021, approximately two months in advance of the first deferred payment becoming due, Ms. Brooks reached out to Ms. Goelz to inquire as to how Silent Falcon planned to start paying the deferred compensation.

48.     Two weeks later, on March 5, 2021, Ms. Goelz advised Ms. Brooks the company could not find the Brooks Employment Agreement and asks Ms. Brooks to resend her a copy of the agreement.

49.     On that same date, Ms. Brooks re-forwarded her original October 15, 2020 email with the employment agreement and other documents. A true and correct copy of the March 5 email from Ms. Brooks to Ms. Goelz (without attachments) is attached hereto as Exhibit F.

50.     On March 9, 2021, Ms. Goelz advised Ms. Brooks that Mr. Bishop sent the Brooks Employment Agreement to a company attorney for review. This is the first time Silent Falcon gave Ms. Brooks any indication there was an issue with the Brooks Employment Agreement signed by Ms. Brooks and forwarded to Silent Falcon on October 15, 2020 or the terms of her employment.

51.     Following this news, Ms. Brooks made multiple requests to discuss the Brooks Employment Agreement with Mr. Bishop.

52.     After repeated requests by Ms. Brooks for a meeting, on March 18, 2021, Mr. Bishop finally responded and asked Ms. Brooks if she was available for a phone call to discuss the contract issue.

53.     That same date, Mr. Bishop and Ms. Brooks discussed the agreement and, specifically, Ms. Brooks' compensation. During that call, Mr. Bishop denied ever seeing the Brooks Employment Agreement or, significantly, agreeing to pay Ms. Brooks any more than $2,000 per month net income plus 5% commission.

54.     Silent Falcon's Operations Manager, Ms. Goelz, also participated in the call.

55.     During the March 18, 2021 phone call, Mr. Bishop advised Ms. Brooks unequivocally that Silent Falcon would not pay Ms. Brooks deferred compensation or any more than net $2,000 per month plus 5% commission.

56.     Mr. Bishop also suggested during the call that Ms. Brooks was responsible for creating the situation by failing to get a signed copy of the Brooks Employment Agreement returned from Silent Falcon.

57.     On March 22, 2021, Ms. Brooks received a commission payment in the amount of $2,427.93 from Silent Falcon.

58.     On or about March 23, 2021, Silent Falcon constructively discharged Ms. Brooks employment by failing to compensate her as promised and stripping her of all management, sales, and client-related duties.

59.     On or about April 16, 2021, Ms. Brooks received a commission payment in the amount of $3,255.99 from Silent Falcon.

60.     On April 19, 2021, Ms. Brooks made a formal demand for payment of her owed wages and commissions via her counsel, which also offered to resolve this matter without resorting to litigation.

61.     Silent Falcon never responded to this demand.

### COUNT I – FLSA MINIMUM WAGE AND OVERTIME VIOLATION

62.     Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

63.     Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

64.     At all relevant times herein, Silent Falcon was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

65.     Upon information and belief, at all relevant times herein, Silent Falcon was an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203 in that it had gross operating revenues in excess of $500,000.00.

66.     The FLSA requires each covered employer such as Silent Falcon to pay at least the federal minimum wage and overtime pay for employees, unless such employees meet the requirements for exemption under 29 U.S.C. § 213(a)(1).

67.     Section 213(a)(1) permits exemption for employees employed as bona fide executive, administrative, professional, and outside sales employees.

68.     At all relevant times herein, Silent Falcon purported to treat Ms. Brooks as an exempt employee.

69.     From October 1, 2020 through the date of Ms. Brooks' constructive discharge, she served in an executive, administrative and/or professional role as the Executive Vice President of Operations in that her job duties included responsibility for sales in all nine FAA regions, hiring and supervising two or more sales personnel, and working with Mr. Bishop to create a national sales strategy.

70.     Ms. Brooks frequently worked more than 40 hours per week during the time she was employed by Silent Falcon.

71.     Despite treating Ms. Brooks as an exempt employee, Silent Falcon failed to compensate Ms. Brooks at a rate equal to at least $684.00 per week.

72.     Because Silent Falcon failed to pay Ms. Brooks the minimum salary required for exempt employees under the FLSA, Silent Falcon was not entitled to an exemption from minimum wage and overtime requirements.

73.     Silent Falcon failed to comply with minimum wage and overtime requirements in compensating Ms. Brooks.

74.     The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count I in the amount of all respective unpaid minimum wage and overtime, plus liquidated damages as provided by 29 U.S.C. § 216(b), for interest, attorneys' fees, costs, and expenses of this action as provided by 29 U.S.C. § 216(b), and for such other and further relief as the Court deems just and proper.

## COUNT II – DECLARATORY RELIEF: ENFORCEABLE CONTRACT

75.     Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

76.     During their September 30, 2020 telephone conversation, Ms. Brooks and Mr. Bishop agreed upon terms which would govern Ms. Brooks' continued employment, including that Silent Falcon would pay Ms. Brooks a guaranteed salary resulting in $15,000 net income per month, payable 6 months in arrears, plus 5% commission on all company sales, with Silent Falcon to get a dollar-for-dollar offset on any commissions earned.

77.     At Mr. Bishop's request, Ms. Brooks prepared a written document memorializing the terms of the parties' agreement.

78.     The Brooks Employment Agreement, attached as Exhibit D, accurately reflected the terms reached by Ms. Brooks and Mr. Bishop in the course of their September 30 conversation.

79.     The parties' subsequent conduct confirmed their intention that Silent Falcon would employ Ms. Brooks in accordance with terms reached on September 30 and set forth in the Brooks Employment Agreement.   For example, after Ms. Brooks sent the Brooks Employment Form to Silent Falcon, on approximately October 15, 2020, the company's operations manager (Ms. Goelz) proceeded to establish Ms. Brooks as a W-2 employee.

80.     Silent Falcon implicitly affirmed the written Brooks Employment Agreement, by accepting the benefit of Ms. Brooks' services, knowing Ms. Brooks expected compensation in return.

81.     Silent Falcon gave Ms. Brooks reason to understand the offer could be accepted through silence or inaction based on its long history of sending contracts to Ms. Brooks for her signature and failing to return fully executed copies of said contracts to her.

82.     The written Brooks Employment Agreement constitutes a valid and binding contract between Ms. Brooks and Silent Falcon.

83.     Between October 15, 2020 and March 23, 2021, Ms. Brooks performed under the Brooks Employment Agreement in that she served as Executive Vice President of Operations for Silent Falcon as a full-time employee.

84.     A dispute has now arisen between Ms. Brooks and Silent Falcon regarding the employment contract between the parties.   Ms. Brooks learned in March 2021 that Silent Falcon and Grant Bishop had no intention of paying her the compensation orally agreed to and memorialized in the Brooks Employment Agreement.

85.     Ms. Brooks learned in March 2021 that Silent Falcon contends the Brooks Employment Agreement is ineffective and not a binding, valid agreement for employment.

86.     Pursuant to 28 U.S.C. §§ 2201-2202, the Court has the power to construe and declare the validity of the Brooks Employment Agreement, and the rights of the parties thereunder.

87.     Ms. Brooks is entitled to a declaratory judgment determining that the written Brooks Employment Agreement is a valid and binding contract between Ms. Brooks and Silent Falcon.

WHEREFORE, Plaintiff respectfully requests a declaratory judgment in her favor, her costs herein expended, and such other and further relief as the Court deems just and proper.

## COUNT III – BREACH OF WRITTEN CONTRACT

88.     Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

89.     The Brooks Employment Agreement constitutes a valid and binding contract between Ms. Brooks and Silent Falcon.

90.     The Brooks Employment Agreement provides that Ms. Brooks will be paid a guaranteed salary of $15,000.00 per month, after taxes and withholdings.

91.     The Brooks Employment Agreement further provides that Ms. Brooks will be paid $2,000.00 per month, after taxes and withholdings, and the remaining $13,000.00, after taxes and withholdings, will be placed in escrow with a deferred payment schedule of six months from the date earned, less commissions paid during that time.

92.     The Brooks Employment Agreement further provides that Ms. Brooks will be entitled to commission of 5% of all national level accounts and 5% of all company sales.

93.     The Brooks Employment Agreement also requires reimbursement to Ms. Brooks for out-of-pocket expenses incurred by her in furtherance of Silent Falcon's business, including travel and phone in the amount of $80.00 per month.

94.     Silent Falcon intentionally, willfully, and materially breached the Brooks Employment Agreement in at least the following particulars:

      (a)     Silent Falcon breached Paragraph 4.A of the Brooks Employment Agreement by refusing to pay Ms. Brooks her guaranteed salary of $15,000 per month, after taxes and withholdings;

      (b)     Silent Falcon breached Paragraph 4.A of the Brooks Employment Agreement by failing to hold her deferred compensation in escrow for six months from the date earned;

      (c)     Silent Falcon breached Paragraph 4.D of the Brooks Employment Agreement by failing to compensate Ms. Brooks for commissions earned; and

      (d)     Silent Falcon breached Paragraph 5 of the Brooks Employment Agreement by failing to reimburse Ms. Brooks for expenses incurred in her furthering Silent Falcon's business.

95.     As a direct and proximate result of Silent Falcon's material breaches of the Brooks Employment Agreement, Ms. Brooks has suffered actual damages.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count III in an amount to be proven at trial, for her costs herein expended, and for such other and further relief as the Court deems just and proper.

## COUNT IV – BREACH OF ORAL CONTRACT

96.     Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

97.     Alternatively, there exists a valid and binding oral contract between Ms. Brooks and Silent Falcon.

98.     Silent Falcon, via its agent and/or representative Grant Bishop, orally promised to pay Ms. Brooks a guaranteed salary of $15,000.00 per month, after taxes and withholdings.

99.     Silent Falcon, via its agent and/or representative Grant Bishop, orally promised to pay Ms. Brooks $2,000.00 per month, after taxes and withholdings, and place the remaining $13,000.00, after taxes and withholdings, in escrow with a deferred payment schedule of six months from the date earned, less commissions paid during that time.

100.     Silent Falcon, via its agent and/or representative Grant Bishop, orally promised to pay Ms. Brooks commission of 5% of all national level accounts and 5% of all company sales.

101.     Silent Falcon, via its agent and/or representative Grant Bishop, orally promised reimbursement to Ms. Brooks for out-of-pocket expenses incurred by her in furtherance of Silent Falcon's business, including travel and phone in the amount of $80.00 per month.

102.     Silent Falcon intentionally, willfully, and materially breached the oral employment agreement in at least the following particulars:

(a)     Silent Falcon breached the oral employment agreement by refusing to pay Ms. Brooks her guaranteed salary of $15,000 per month, after taxes and withholdings;

(b)     Silent Falcon breached the oral employment agreement by failing to hold her deferred compensation in escrow for six months from the date earned;

16

(c)     Silent Falcon breached the oral employment agreement by failing to compensate Ms. Brooks for commissions earned; and

(d)     Silent Falcon breached the oral employment agreement by failing to reimburse Ms. Brooks for expenses incurred in her furthering Silent Falcon's business.

103.    As a direct and proximate result of Silent Falcon's material breaches of the oral employment agreement, Ms. Brooks has suffered actual damages.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count IV in an amount to be proven at trial, for her costs herein expended, and for such other and further relief as the Court deems just and proper.

## COUNT V – PROMISSORY ESTOPPEL

104.    Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

105.    Silent Falcon promised to compensate Ms. Brooks in at least the amount identified in the written Brooks Employment Agreement and/or oral agreement.

106.    Ms. Brooks relied on all of these promises to her detriment in that she was not compensated as promised, did not receive deferred compensation as promised, and was not reimbursed for her business expenses as promised.

107.    Silent Falcon expected or should have expected that Ms. Brooks would rely on its promises.

108.    Silent Falcon's failure to compensate Ms. Brooks as promised, failure to pay her deferred compensation as promised, and failure to reimburse her for expenses as promised, has resulted in an injustice that only enforcement of the promise could cure.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count V in an amount to be proven at trial, for her costs herein expended, and for such other and further relief as the Court deems just and proper.

### COUNT VI – UNJUST ENRICHMENT

109.    Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

110.    Silent Falcon was enriched by the receipt of a monetary benefit in that it received the value of Ms. Brooks' employment services but failed to properly compensate Ms. Brooks in the amount represented by Silent Falcon and/or as specified in the Brooks Employment Agreement.

111.    Additionally, and/or alternatively, Silent Falcon was enriched by the receipt of a monetary benefit in that Silent Falcon failed to meet all its financial obligations, including payment of Ms. Brooks' compensation.

112.    Silent Falcon had a duty to pay Ms. Brooks her deferred compensation and commissions, and to reimburse her for business expenses.

113.    Silent Falcon did not ensure that Ms. Brooks' deferred compensation was placed in escrow for payment within six months from the date earned.

114.    Silent Falcon directly benefitted financially by failing to pay Ms. Brooks' deferred compensation and commissions and failing to reimburse her for business expenses.

115.    Silent Falcon received and retained the aforementioned financial benefits at the expense of, and detriment to, Ms. Brooks.

116.     It would be unjust to allow Silent Falcon to retain the financial benefits when Ms. Brooks was not paid her deferred compensation or commissions owed, and she was not reimbursed for her business expenses.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count VI in an amount to be proven at trial, for her costs herein expended, and for such other and further relief as the Court deems just and proper.

## COUNT VII – FRAUDULENT MISREPRESENTATION/FRAUDULENT INDUCEMENT

117.     Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

118.     In order to induce Ms. Brooks to work under the Brooks Employment Agreement and/or oral agreement so that Silent Falcon could reap the benefits of that agreement, Silent Falcon represented to Ms. Brooks that Ms. Brooks would be compensated a guaranteed salary of $15,000.00 per month, after taxes and withholdings, and minus any commission paid.

119.     Between September 2020 and October 2020, Silent Falcon made promises and representations to Ms. Brooks regarding her compensation once she became a full-time employee of Silent Falcon.

120.     For example, and not by way of limitation, in a telephone call on or about September 30, 2020, Grant Bishop, as an agent and/or representative of Silent Falcon, represented to Ms. Brooks that Silent Falcon would compensate Ms. Brooks as a full-time employee for $15,000.00 per month net income, payable six months in arrears, with 5% commission on any company sales, and Silent Falcon would receive a dollar-for-dollar offset on any commissions earned.

121.    For example, and not by way of limitation, Grant Bishop advised Ms. Brooks to prepare a written employment agreement that memorialized the oral agreement reached on or about September 30, 2020.

122.    For example, and not by way of limitation, Ms. Brooks prepared the Brooks Employment Agreement as requested by Grant Bishop by revising the contract previously sent by Hannah Goelz to reflect the agreed-upon terms.

123.    For example, and not by way of limitation, Ms. Brooks sent an executed copy of the Brooks Employment Agreement to Hannah Goelz, along with Ms. Brooks' other employment-related processing documents, including a pay-roll deposit form, Form I-9, and Form W-4.

124.    Ms. Brooks agreed to the Brooks Employment Agreement based on Grant Bishop's oral representations.

125.    Ms. Brooks would never have agreed to the Brooks Employment Agreement and/or oral agreement if she was only going to be compensated $2,000.00 per month plus 5% commissions while simultaneously taking on significant additional responsibilities from her independent contractor position with Silent Falcon.

126.    Given Ms. Brooks' professional background, Ms. Brooks would have continued devoting her time and energy to her successful recruiting business Unmanned Power or sought employment elsewhere.

127.    Ms. Brooks learned in March 2021 that Silent Falcon and Grant Bishop had no intention of paying her the compensation orally agreed to and memorialized in the Employment Agreement.

128.    All of Silent Falcon's representations were made with knowledge of their falsehood or reckless disregard for the truth or falsity of the statements. These representations were made with the intent to induce Ms. Brooks to enter into the Brooks Employment Agreement and/or oral agreement and ultimately to persuade Ms. Brooks to work under said agreement for Silent Falcon.

129.    The representations made by Silent Falcon were material to Ms. Brooks' participation as an employee under the Brooks Employment Agreement and/or oral agreement, which was necessary for Silent Falcon to reap the benefits of the Brooks Employment Agreement and/or oral agreement.

130.    Silent Falcon knew the representations were false at the time they were made or was ignorant of their truth. Alternatively, Silent Falcon did not know whether the representations were true or false but made them in a reckless manner.

131.    Silent Falcon intended for Ms. Brooks to act upon the representations by agreeing to employment as a full-time employee under the Brooks Employment Agreement and/or oral agreement with Silent Falcon.

132.    Ms. Brooks did not know the representations were false at the time they were made by Silent Falcon.

133.    Ms. Brooks justifiably relied on Silent Falcon's representations in agreeing to work for Silent Falcon as a full-time employee under the Brooks Employment Agreement and/or oral agreement.

134.    As a result of Silent Falcon's misrepresentations, Ms. Brooks has sustained actual damages in that she was not paid the amounts of compensation promised by Silent Falcon.

135.    The aforesaid acts of Silent Falcon were intentional, malicious, and done with reckless disregard for the rights of Ms. Brooks.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count VII in an amount to be proven at trial, for her costs herein expended, and for such other and further relief as the Court deems just and proper.

## COUNT VIII – FRAUD BY OMISSION

136.    Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

137.    In order to induce Ms. Brooks to work full time at Silent Falcon, Silent Falcon represented to Ms. Brooks that it would compensate her a guaranteed salary of $15,000.00 per month, after taxes and withholdings.

138.    Between September 2020 and October 2020, Silent Falcon made promises and representations to Ms. Brooks regarding her compensation once she became a full-time employee of Silent Falcon.

139.    For example, and not by way of limitation, during a September 18, 2020 phone call, Ms. Brooks reminded Mr. Bishop that she had agreed to support her sales territory for ninety days at an extremely low rate of pay and that this agreement was now approaching 120 days in existence. Ms. Brooks further advised Mr. Bishop that she needed to be compensated for her time at a value commensurate with her talent and experience or she would need to return to working five hours per week or focus her attention on her recruiting company Unmanned Power. She also floated the possibility of a deferred compensation plan to Mr. Bishop, given Silent Falcon's relatively undemonstrated sales record and cash flow issues.

140.    Mr. Bishop told Ms. Brooks during the September 18, 2020 phone call to tell him what Silent Falcon needed to do to make this employment deal happen and Silent Falcon would make it happen.

141.    Mr. Bishop also advised Ms. Brooks during the September 18, 2020 phone call that he believed she was worth $250,000.00 in salary per year.

142.    Mr. Bishop further represented during the September 18, 2020 phone call that he had been to Silent Falcon's banking lender and it was willing to float Silent Falcon money some of which could cover Ms. Brooks' salary.

143.    For example, and not by way of limitation, on September 30, 2020, Ms. Brooks and Mr. Bishop had a subsequent conversation about the proposed terms of Ms. Brooks converting from a part-time, independent contractor to a full-time employee. Mr. Bishop confirmed Ms. Brooks was doing a great job and had built a fantastic sales team. Mr. Bishop expressed he did not want Silent Falcon to lose Ms. Brooks, but could not immediately compensate her for her full value. As such, Ms. Brooks and Mr. Bishop discussed a deferred compensation plan offset by commissions.

144.    During this meeting, Mr. Bishop, as an agent and/or representative of Silent Falcon, represented to Ms. Brooks that Silent Falcon would compensate Ms. Brooks as a full-time employee for $15,000.00 per month net income, payable six months in arrears, with 5% commission on any company sales, and Silent Falcon would receive a dollar-for-dollar offset on any commissions earned.

145.    For example, and not by way of limitation, Grant Bishop advised Ms. Brooks to prepare a written employment agreement that memorialized the oral agreement reached on or about September 30, 2020.

146.    For example, and not by way of limitation, Ms. Brooks prepared the Brooks Employment Agreement as requested by Grant Bishop by revising the contract previously sent by Hannah Goelz to reflect the agreed-upon terms.

147.    For example, and not by way of limitation, Ms. Brooks sent an executed copy of the Brooks Employment Agreement to Hannah Goelz, along with Ms. Brooks' other employment-related processing documents, including a pay-roll deposit form, Form I-9, and Form W-4.

148.    Ms. Brooks agreed to the Brooks Employment Agreement and/or oral agreement based on Grant Bishop's oral representations.

149.    Silent Falcon was silent in the face of a legal duty to speak.

150.    Silent Falcon had superior knowledge to Ms. Brooks as to its intent regarding her compensation.

151.    Ms. Brooks would never have agreed to the Brooks Employment Agreement and/or oral agreement if she was only going to be compensated $2,000.00 per month plus 5% commissions while simultaneously taking on significant additional responsibilities from her independent contractor position with Silent Falcon.

152.    Given Ms. Brooks' professional background, Ms. Brooks would have continued devoting her time and energy to her successful recruiting business Unmanned Power or sought employment elsewhere.

153.    Ms. Brooks learned in March 2021 that Silent Falcon and Grant Bishop had no intention of paying her the compensation orally agreed to and memorialized in the Brooks Employment Agreement.

154.    Silent Falcon's silence in the face of a duty to speak was material to Ms. Brooks'

participation as an employee under the Brooks Employment Agreement and/or oral agreement,

which was necessary for Silent Falcon to reap the benefits of the Brooks Employment

Agreement and/or has having Ms. Brooks as an employee of Silent Falcon.

155.    At the time the representations were made, including at the time Silent Falcon was

silent in the face of a duty to speak, Silent Falcon knew the representations and silence were false

at the time they were made. Alternatively, Silent Falcon did not know whether the

representations and/or silence were true or false but made them in a reckless manner.

156.    Silent Falcon intended for Ms. Brooks to act upon the representations and/or

silence by agreeing to employment as a full-time employee under the Brooks Employment

Agreement with Silent Falcon.

157.    Ms. Brooks did not know the representations and/or silence were false at the time

they were made by Silent Falcon.

158.    Ms. Brooks justifiably relied on Silent Falcon's representations and/or silence in

agreeing to work under the Brooks Employment Agreement and/or for Silent Falcon as a full-

time employee.

159.    As a result of Silent Falcon's misrepresentations and/or silence, Ms. Brooks has

sustained actual damages in that she was not paid the amounts of compensation promised by

Silent Falcon.

160.    The aforesaid acts of Silent Falcon were intentional, malicious, and done with

reckless disregard for the rights of Ms. Brooks.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count VIII in an amount to be proven at trial, for her costs herein expended, and for such other and further relief as the Court deems just and proper.

## COUNT IX– NEGLIGENT MISREPRESENTATION

161.    Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

162.    In order to induce Ms. Brooks to work full time at Silent Falcon, Silent Falcon represented to Ms. Brooks that it would compensate her a guaranteed salary of $15,000.00 per month, after taxes and withholdings.

163.    Between September 2020 and October 2020, Silent Falcon made promises and representations to Ms. Brooks regarding her compensation once she became a full-time employee of Silent Falcon.

164.    For example, and not by way of limitation, during a September 18, 2020 phone call, Ms. Brooks reminded Mr. Bishop that she had agreed to support her sales territory for ninety days at an extremely low rate of pay and that this agreement was now approaching 120 days in existence. Ms. Brooks further advised Mr. Bishop that she needed to be compensated for her time at a value commensurate with her talent and experience or she would need to return to working five hours per week or focus her attention on her recruiting company Unmanned Power. She also floated the possibility of a deferred compensation plan to Mr. Bishop, given Silent Falcon's relatively undemonstrated sales record and cash flow issues.

165.    Mr. Bishop told Ms. Brooks during the September 18, 2020 phone call to tell him what Silent Falcon needed to do to make this employment deal happen and Silent Falcon would make it happen.

166.    Mr. Bishop also advised Ms. Brooks during the September 18, 2020 phone call that he believed she was worth $250,000.00 in salary per year.

167.    Mr. Bishop further represented during the September 18, 2020 phone call that he had been to Silent Falcon's banking lender and it was willing to float Silent Falcon some of which could cover Ms. Brooks' salary.

168.    For example, and not by way of limitation, on September 30, 2020, Ms. Brooks and Mr. Bishop had a subsequent conversation about the proposed terms of Ms. Brooks converting from a part-time, independent contractor to a full-time employee. Mr. Bishop confirmed Ms. Brooks was doing a great job and had built a fantastic sales team. Mr. Bishop expressed he did not want Silent Falcon to lose Ms. Brooks, but could not immediately compensate her for her full value. As such, Ms. Brooks and Mr. Bishop discussed a deferred compensation plan offset by commissions.

169.    During this meeting, Mr. Bishop, as an agent and/or representative of Silent Falcon, represented to Ms. Brooks that Silent Falcon would compensate Ms. Brooks as a full-time employee for $15,000.00 per month net income, payable six months in arrears, with 5% commission on any company sales, and Silent Falcon would receive a dollar-for-dollar offset on any commissions earned.

153.    For example, and not by way of limitation, Grant Bishop advised Ms. Brooks to prepare a written employment agreement that memorialized the oral agreement reached on or about September 30, 2020.

154.    For example, and not by way of limitation, Ms. Brooks prepared the Brooks Employment Agreement as requested by Grant Bishop by revising the contract previously sent by Hannah Goelz to reflect the agreed-upon terms.

155.    For example, and not by way of limitation, Ms. Brooks sent an executed copy of the Brooks Employment Agreement to Hannah Goelz, along with Ms. Brooks' other employment-related processing documents, including a pay-roll deposit form, Form I-9, and Form W-4.

156.    Ms. Brooks agreed to the Brooks Employment Agreement and/or oral agreement based on Grant Bishop's oral representations.

157.    Ms. Brooks would never have agreed to the Brooks Employment Agreement and/or oral agreement if she was only going to be compensated $2,000.00 per month plus 5% commissions while simultaneously taking on significant additional responsibilities from her independent contractor position with Silent Falcon.

158.    Given Ms. Brooks' professional background, Ms. Brooks would have continued devoting her time and energy to her successful recruiting business Unmanned Power or sought employment elsewhere.

159.    Ms. Brooks learned in March 2021 that Silent Falcon and Grant Bishop had no intention of paying her the compensation orally agreed to and memorialized in the Brooks Employment Agreement.

160.    All of Silent Falcon's representations were made with knowledge of their falsehood or reckless disregard for the truth or falsity of the statements. These representations were made with the intent to induce Ms. Brooks to work full time for Silent Falcon.

161.    The representations made by Silent Falcon were material to Ms. Brooks' participation as an employee under the Brooks Employment Agreement and/or oral agreement, which was necessary for Silent Falcon to reap the benefits of the Brooks Employment Agreement and/or oral agreement.

162.     Silent Falcon failed to use reasonable care when it made such representations to Ms. Brooks and the representations were false.

163.     Ms. Brooks did not know the representations were false at the time they were made by Silent Falcon.

164.     Ms. Brooks justifiably relied on Silent Falcon's representations in agreeing to work under the Brooks Employment Agreement and/or for Silent Falcon as a full-time employee.

165.     As a result of Silent Falcon's misrepresentations, Ms. Brooks has sustained actual damages in that she was not paid the amounts of compensation promised by Silent Falcon.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count IX in an amount to be proven at trial, for her costs herein expended, and for such other and further relief as the Court deems just and proper.

### COUNT X– VIOLATION OF NEW MEXICO WAGE AND HOURS LAWS

166.     Ms. Brooks incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

167.     Ms. Brooks was constructively discharged on or about March 23, 2021, when Silent Falcon refused to pay her compensation and commissions owed pursuant to the Brooks Employment Agreement and/or oral agreement, and stripped her of management, sales, and client-related duties.

168.     Ms. Brooks never received payment for wages and compensation owed within ten (10) days of the date of discharge.

169.     On April 19, 2021, Ms. Brooks demanded payment as agreed to under the Brooks Employment Agreement and/or the September 30, 2020 oral agreement.

170.     Ms. Brooks never received a response to her demand for payment.

171.     Silent Falcon violated New Mexico wage and hour laws, including NMSA § 50-4-4, by failing to pay wages and compensation owed to Ms. Brooks under either the Brooks Employment Agreement and/or her September 30, 2020 oral agreement with Silent Falcon within ten (10) days of her date of discharge.

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and against Defendant on Count X in an amount to be proven at trial, for all unpaid wages, for compensation accrued for 60 more days pursuant to NMSA 50-4-4(D), for her costs herein expended, for any civil penalties permitted under the law, for attorney's fees to the extent they are available, and for such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Respectfully Submitted,

RMH LAWYERS, PA

/s/ Elizabeth A. Heaphy
Elizabeth A. Heaphy
316 Osuna Rd. NE, Unit 201
Albuquerque, NM  87107
(505) 247-8860/ FAX: (505) 247-8881
eah@rmhlawyers.com
*Attorneys for Plaintiff Whitney Brooks*

*and*

SHAFFER LOMBARDO SHURIN P.C.

/s/ James D. Myers
James D. Myers          (Pro Hac Vice Pending)
Rachael D. Longhofer   (Pro Hac Vice Pending)
2001 Wyandotte Street
Kansas City, Missouri 64108
(816) 931-0500/FAX: (816) 931-5775
jmyers@sls-law.com
rlonghofer@sls-law.com
*Attorneys for Plaintiff Whitney Brooks*